**UNITED STATES of America**
**v.**
**Frank E. CRUTCHLEY, Appellant,**
**and**
**Florence Gorman.**
**No. 74–1023.**

United States Court of Appeals, Third Circuit.

Argued May 17, 1974.

Decided Sept. 16, 1974.

Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., Louis J. Ruch, Special Atty., Dept. of Justice, DEA Task Force, Philadelphia, Pa., for appellee.

Harry S. Tischler, Asst. Defender, Philadelphia, Pa., for appellant.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before the court on appeal from a November 27, 1973, judgment of conviction and probation sentence entered after a court finding that defendant was guilty of theft of government property on June 5, 1973, in violation of 18 U.S.C. § 641, as charged in count I of a three-count indictment.[1]

One bail hearing was held before U.S. Magistrate Powers on June 6 and another bail hearing was held before U.S. Magistrate Naythons on June 13.[2]

On June 29, 1973, the first indictment was returned by the grand jury and on August 28, 1973, defendant filed a Petition to Dismiss Indictment, alleging that a malfunction of the recording machinery prevented his counsel from securing a transcript of the June 6 and June 13 hearings and that no record had been made of the grand jury proceedings leading to the June 29 indictment. On August 31, 1973, a superseding indictment was returned after the first indict-

---

1. Count I charges that defendant "wilfully and knowingly, did embezzle, steal, purloin and convert to [his] own use . . . [$210.], money of the United States," in violation of 18 U.S.C. § 641.

2. A preliminary hearing was held before U.S. Magistrate Naythons in July. No stenographic transcript or recording of this hearing was made.

ment had been dismissed. Count I of both indictments contained the same language. No recording had been made of the grand jury proceedings leading to the first indictment, but there was a recording of the government agent's or agents' testimony leading to the second indictment (N.T. 21 of Document 11 in Criminal No. 73–483, E.D.Pa.).[3]

On September 10, 1973, an Amended Motion to Dismiss the Indictment (Document 8 in Criminal No. 73–483, E.D. Pa.) was filed.

After a hearing on September 12, 1973, the district court made the following ruling with these findings, *inter alia*, on the petitions to dismiss the indictment (N.T. 21–24 of Document 11):

"My ruling is that there has been no showing of prejudice by reason of the apparent absence of some of the testimony which may have been presented at a preliminary hearing.

"I express it in those words advisedly, because I think the record is, unfortunately, still rather fuzzy as to just what did happen. There is, for example, no evidence as to who testified. There is no evidence as to what was said or as to the extent which it might conceivably bear on the ability of the defendants to make an adequate defense of the case.

"Be that as it may, I find as a fact that the reason for the non-availability of the testimony is not due to the fault of either side and will point out that the rationale that underlies some of the cases which grant dismissals for somewhat similar reasons, although not certainly similar to this case, but the basic rationale is that the defendant should be in as good a position as the government, that the government should not have access to information which the defendant does not have.

"Now, to the extent that a government witness testified at the preliminary hearing, both sides were there and heard it. If it turned out that the government had access to a transcript and the defendant didn't, obviously that would be unfair and improper. But here neither side has access to a transcript of the statement. Each side has to rely on its own recollection of what was said, to the extent that that becomes relevant at trial, and I frankly doubt that it would be likely to have much bearing on the trial in any event.

"Now we go to the question of the grand jury testimony. The record establishes conclusively that the now pending indictment is a superseding indictment and that all testimony presented to the grand jury in support of the superseding indictment was, in fact, transcribed, and that a transcript of the testimony of each witness who testifies at trial will be available for cross examination purposes.

"It seems to me that obviously accords the defendants all of their rights.

"The argument is made that because there was an earlier indictment at which the testimony was not transcribed that that somehow alters the situation. I would point out in passing that the only evidence before me is as to what the practice of the United States Attorney's office has been with regard to transcribing the testimony of some witnesses and not others.

"There is, in point of fact, no evidence before me that that practice was followed in this case at any stage. There is no evidence as to who testified before the grand jury as to either indictment. In short, there is simply a total failure of proof.

"But assuming for the moment that certain witnesses testified in support of the first indictment, their testimo-

---

3. As noted below, the district court found that all the testimony before the grand jury was transcribed but it is not clear whether testimony was offered by one or two agents.

ny was not recorded, there was a superseding indictment, and their testimony was recorded, I am at a loss to understand how the defense can claim any prejudice by reason of that circumstance.

"So to make a long story short, I find that there is no merit under the circumstances of this case to the arguments presented on behalf of the defendants, and I deny the motions to dismiss the indictment."

The government evidence at the October 23, 1973, nonjury trial showed that defendant and co-defendant Gorman met with a government special agent (Kean) acting in an undercover capacity on June 5, 1973 in Philadelphia. Kean told Crutchley he wanted to buy narcotics and they negotiated for Crutchley to sell Kean two bundles of heroin for $210. Crutchley took Kean to 2349 Orkney Street, where the defendant talked to the occupant, who was in the doorway of the house, and returned saying that the $210. would have to be given to the occupant-seller before the heroin would be delivered. Government funds in the amount of $210. were given to defendant who, together with the co-defendant, was later observed climbing out of a rear window of the house with the money. The defendant and co-defendant were then arrested, at which time co-defendant Gorman stated she knew Kean was "the police" and "they . . . planned to rob [him]" (N.T. 13).

The defendant offered no evidence at the trial. The trial judge made these specific findings, *inter alia* (N.T. 86–89):

"... the evidence clearly discloses that the defendant Crutchley at least had set upon a scheme to defraud the person who was, in fact, the agent of the United States by taking the $210 under the pretense that he would buy narcotics with it, but having at that time no intent to purchase narcotics with the money, but rather

an intent to convert the money to his own use.

"I base that finding in large part upon the fact that Mr. Crutchley did take the money, the full amount of $210, and by the arrangements that he made with the owner of the house, Mr. Baker, it is apparent that he had no intention of procuring narcotics.

"I find that he thereafter tried to sneak out the back way with the money, thus nailing down the fact that he intended to steal it and did not intend to buy narcotics with it.

. . . . . .

"I find that the evidence is insufficient to make a firm finding that the defendant Crutchley knew at the time that he got the money that it was government money.

"As a legal conclusion, I have concluded that the law is that the government does not have to prove knowledge on the part of the defendants as to the ownership of the money. . . . I find that the money was owned by and did belong to the United States government, that the evidence as to the tracing of the money, specifically the evidence relating to government Exhibit G–1 is true and correct and that the money which was recovered from the two defendants respectively was part of the money which had been furnished to them through the agent.

"So, to repeat, I find the defendant Frank Crutchley guilty of the first count as charged. . . ."

The trial judge's legal conclusions included the statement that ". . . the original taking was larceny by trick" (N.T. 89).

I. *Absence of any record of Magistrates' hearings.*

A. *Bail hearings.*

█ No statute or rule of court requires a recording or transcript of the bail hearings and the record does not show any prejudice or unfairness to de-

fendant resulting from the absence of such recording or transcripts. See III below.[4]

B. *The preliminary hearing of July, 1973.*

■ The absence of any record of the preliminary hearing of July, 1973 did not prejudice the defendant in this case, and such hearing was not required by 18 U.S.C. § 3060(e).

A preliminary hearing is not "required to be accorded an arrested person . . ., if at any time subsequent to the initial appearance of such person before a judge or magistrate and prior to the date fixed for the preliminary examination pursuant to subsections (b) and (c) an indictment is returned . . . against such person in a court of the United States." See 18 U.S.C. § 3060(e). As noted above, the defendant was subject to the indictment of June 29, 1973, at the time of the July preliminary hearing.

Furthermore, the district court found "as a fact that the reason for the nonavailability of the testimony is not due to the fault of either side," and "neither side has access to a transcript of the statement." See page 1197 above.

II. *Practice of the United States Attorney in some cases of selectively recording or transcribing only those portions of grand jury testimony presented by non-government witnesses.*

■ The district court found that there was no evidence that the above practice, which is apparently often used in the United States District Court for the Eastern District of Pennsylvania, was used in this case. It held that there was "a total failure of proof" that this practice was followed "in this case at any stage" (see page 1197 above). The evidence shows that there was no recording or transcript of the testimony before the first grand jury and that "all testimony presented to the grand jury in support of the superseding indictment was transcribed and that a transcript . . . will be available [at trial] for cross-examination purposes." Thus, there was no error in its denial of defendant's motion to dismiss the superseding indictment.

Nevertheless, because of our concern with this problem, we requested the parties to this case to submit supplemental memoranda, as a result of which we have been informed by appellee as follows:

"About a year ago the Criminal Division asked all the United States Attorneys to comment upon a proposal to require the recording of all grand jury proceedings. . . . A number of United States Attorneys complained of the difficulty currently encountered in obtaining the services of court reporters on a timely basis and questioned whether a recording requirement could reasonably be met. The use of electronic recording equipment to record all grand jury proceedings might be practical, but the cost for the equipment, necessary personnel, and a certain amount of acoustical engineering would be very substantial.

"The advisory committee on the criminal rules of the Judicial Conference is now considering the amendment of Rule 6 of the Federal Rules of Criminal Procedure to require the recording of all grand jury proceedings. It is anticipated that the committee will soon make its recommendation concerning the substance and scope of the proposal.

.    .    .    .    .    .

---

4. The district court finding of guilt on Count I was not based on any contention that defendant knew the money stolen was t'e property of the United States, despite the oral statements of the co-defendant to this· effect at the time of the arrest. Under these circumstances, defendant's arguments as to the prejudice caused by the absence of such recording or transcripts are irrelevant.

"III. PRACTICE FOLLOWED IN EACH OF. THE UNITED STATES DISTRICT COURTS OF THE THIRD CIRCUIT REGARDING THE RECORDING OF GRAND JURY TESTIMONY.

"The same general practice with regards to recording grand jury testimony is followed in the Eastern District of Pennsylvania, the Western District of Pennsylvania, the District of New Jersey and the District of Delaware. In these Districts the testimony of lay witnesses is recorded and the testimony of agents on indictments is not recorded. Exceptions to this general practice in some cases are made at the discretion of the Assistant United States Attorney.

"The Middle District of Pennsylvania as a general practice does not record any grand jury testimony."

See pp. 8–10 of appellee's supplemental memorandum.

■ We have held that the recording of all grand jury testimony is not required. See United States v. Heckman, 479 F.2d 726, 732 (3d Cir. 1973).[5] However, the federal courts considering the requirements governing the recording of grand jury testimony have generally stated that in a criminal case the parties should be in an equal position in their ability to impeach witnesses through the use of grand jury testimony, see Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), and hence the practice of only transcribing a portion of the grand jury testimony has been disapproved. See, for example, United States v. Battisti, 486 F.2d 961, 963–964 (6th Cir. 1973); United States v. Arradondo, 483 F.2d 980, 984–985 (8th Cir. 1973); United States v. Aloisio, 440 F.2d 705, 708 n.2 (7th Cir. 1971); United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970); Schlinsky v. United States, 379 F.2d 735, 740 (1st Cir. 1967); United States v. Cianchetti, 315 F.2d 584, 591 (2d Cir. 1963).

The practice of recording the grand jury testimony only of non-Government witnesses is undesirable, since it denies defendants the same opportunity available to the Government of impeaching the trial testimony of those witnesses unfavorable to their case. *If* the testimony of any grand jury witness or witnesses is to be recorded, either by a court reporter or a recording device, all such testimony should be recorded so that the defense and the Government will both have available all portions of the grand jury testimony, provided that the court approves the method, form and condition of disclosure. This practice would prevent the recording of only those portions of grand jury testimony helpful to the Government.

---

5. *Accord* United States v. Schrenzel, 462 F.2d 765, 772–773 (8th Cir. 1972); United States v. Mallory, 460 F.2d 243, 248 (10th Cir. 1972); United States v. Kind, 433 F.2d 339, 340–341 (4th Cir. 1970); United States v. Harper, 432 F.2d 100, 102 (5th Cir. 1970); United States v. Watson, 421 F.2d 1357 (9th Cir. 1970); United States v. Cianchetti, 315 F.2d 584, 591 (2nd Cir. 1963).

Several circuit court of appeals decisions state that recording of the grand jury proceedings is the better practice; see United States v. Aloisio, 440 F.2d 705, 708 (7th Cir. 1971); United States v. Cramer, 447 F.2d 210, 214 (2nd Cir. 1971); cf. Schlinsky v. United States, 379 F.2d 735, 740 (1st Cir. 1967). See also Knudsen, "Pretrial Disclosure of Grand Jury Testimony", 60 F.R.D. 237, 253 ff. (1973); ABA Report of the Special Committee on Rules of Procedure, 52 F.R.D. 87, 94–95 (1971). The failure to compel production of grand jury testimony where there is no record, however, is not reversible error. Wyatt v. United States, 388 F.2d 395 (10th Cir. 1968).

Since the Advisory Committee on Criminal Rules of the Judicial Conference of the United States is now considering "suggestions with respect to the operation and use of the grand jury and to the legal problems connected therewith" (Report of the Proceedings of the Judicial Conference of the United States at p. 81, September 13, 14, 1973), including the recording of testimony (see *Knudsen, supra*), we do not consider it desirable to require the recording of all grand jury testimony at this time.

III. *Contention that 18 U.S.C. § 641 requires proof that the defendant knew that "the property taken was that of the United States."*

 After careful consideration, we approve of the district court holding that the Government was not required to prove that Crutchley was aware that the property taken belonged to the United States. We decline to follow the view adopted in Findley v. United States, 362 F.2d 921 (10th Cir. 1966). In United States v. Howey, 427 F.2d 1017 (9th Cir. 1970), the court used this language at 1017–1018:

"We think that Findley is wrong, and we decline to follow it.

"It was not an essential part of the common law larceny-type offense that the thief knew who owned the property he took; it was enough that he knew it did not belong to him. The legislative history provides no support for an assumption that Congress intended in section 641 to add to the common law offenses a new requirement that a thief know who owned the property he was stealing.

"The reason for including the requirement that the property, in fact, belongs to the Government was to state the foundation for federal jurisdiction. A defendant's knowledge of the jurisdictional fact is irrelevant, as we have held in many cases interpreting analogous statutory provisions."

The position taken in *Howey,* supra, has been followed in subsequent decisions of the United States Court of Appeals dealing with this subject. See United States v. Smith, 489 F.2d 1330, 1332–1334 (7th Cir. 1973); United States v. Boyd, 446 F.2d 1267, 1274 (5th Cir. 1971); Baker v. United States, 429 F.2d 1278 (9th Cir. 1970).

**6.** In *Morissette,* the Supreme Court said:
"The history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also

IV. *Contention that 18 U.S.C. § 641 does not encompass larceny by trick.*

 The Supreme Court has made clear that 18 U.S.C. § 641 was designed to apply to not only larceny and embezzlement but all "instances" where under "slightly different circumstances under which one may obtain wrongful advantages from another's property". Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 254, 96 L.Ed. 288 (1952).[6] See also Crabb v. Zerbst, 99 F.2d 562, 564–565 (5th Cir. 1938).

In view of these authorities, this contention is rejected.

For the foregoing reasons, the November 30, 1973, district court judgment will be affirmed.

acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions."
342 U.S. at 269, n.28, 72 S.Ct. at 253.