**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard SPEIR and Gary Puffer,
Defendants-Appellants.**

**Nos. 75–1807, 75–1808.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 21, 1976.

Submitted En Banc Sept. 12, 1977.

Decided Nov. 10, 1977.

John S. Castellano of Holland & Hart,
Denver, Colo., for defendants-appellants
Speir and Puffer.

Max D. Wheeler, Asst. U. S. Atty., Salt
Lake City, Utah, for plaintiff-appellee.

Before LEWIS, Chief Judge, and SETH, HOLLOWAY, McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendants Speir and Puffer were convicted under 18 U.S.C. § 641 (1970) of stealing Government property, approximately 250 Christmas trees allegedly worth approximately $1,250, from a national forest. A co-defendant, Vernon Black, was convicted of wilfully and knowingly receiving the stolen trees under the same statute. All three defendants appeal their convictions and sentences, one year each for Speir and Puffer and five years for Black, whose appeal is decided in a separate opinion.[1] They essentially argue that the Government proof was insufficient, that conduct of the trial court denied them a fair trial, and that the instructions and proof omitted the essential element of knowledge that the trees were Government property.

■ The challenge to the sufficiency of the evidence presents serious problems. After a jury conviction we must consider the record to determine if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, on which the jury could find the defendants guilty beyond a reasonable doubt. *United States v. Twilligear*, 460 F.2d 79, 81–82 (10th Cir.). With that standard in mind we turn to proof in the record.

The Government's proof tended to show these facts: At about 9:00 a. m. on November 27, 1974, a clerk in the Forest Ranger's office in Beaver, Utah, received a telephone call from the town marshal of Marysvale, Utah, a town approximately sixty miles from Beaver. The marshal advised the clerk that a blue, late model pickup truck with white racks, "probably a Chevrolet", had just been observed coming from the Fishlake National Forest with a load of Christmas trees. (R. I, 10, 25, 40). The clerk then repeated the information to the ranger, who testified about the matter at trial.[2]

Forest Ranger Floyd H. Bartlett, who was in the office at the time of the call, suspected that the truck described by the marshal was owned by defendant Speir. Bartlett sent one of the other forest rangers to Speir's residence in Beaver to see if his truck was there. It was not. Bartlett and another ranger then left for Marysvale.

After Bartlett had proceeded a short way from Beaver, he telephoned the ranger's office and requested that his wife be contacted and asked to watch the Christmas tree lot of defendant Black which was located about a half block from Bartlett's home. Bartlett had seen Speir's truck deliver several loads to Black's lot in the past. When Bartlett was approximately 20 miles north of Beaver, he telephoned the ranger's office again and was advised that Speir's truck had entered Black's lot and that trees were being unloaded from it.

Bartlett proceeded to Marysvale and then into a canyon outside of the town where he followed tire tracks to an area in the National Forest where trees had been freshly cut along the side of the road. (R. I, 14, 17–18). The trees that had been cut were "almost entirely" Alpine fir though there were a "few" spruce. Bartlett and the other forest ranger began to cut off the top sections of the tree stumps. (Id. at 15).

---

1. The three appeals were consolidated for argument but are decided by separate opinions. The court, on its own motion, has considered the appeals of Speir and Puffer en banc since we are overruling a prior opinion of the court. By a separate opinion in No. 75–1766, we reverse the conviction of defendant Black for insufficiency of the evidence to sustain his conviction. Due to the nature of the issue treated in that opinion it is unpublished. See Rule 17, Tenth Circuit.

2. A hearsay objection to this proof was overruled on the ground that the proof was "preliminary." (R. I, 9–11). No witness with knowledge of these facts testified. No limiting instruction or explanation on use of the proof was given and the jury was left free to use this proof like any other evidence to connect the truck and the stolen trees to Speir and Puffer. While the claim of erroneous admission of hearsay appears good, in view of other substantial evidence discussed below, error in its admission was harmless.

Bartlett left his partner to complete the cutting and returned to Beaver with the initial stump cuts and obtained a warrant to search Black's tree lot.

In the meantime Bartlett's wife had been asked by John Osborn, a Forestry Technician assigned to the Beaver office, to watch Black's lot for the delivery and unloading of any trees. (R. I, 55, 71). About 9:30 a. m., Mrs. Bartlett observed a blue GMC truck with white racks, which she had seen Speir drive on prior occasions, loaded with trees. (Id. at 55, 57). She identified Speir as the driver and defendant Puffer as the passenger. (Id. at 57). When the truck arrived at Black's tree lot, Mrs. Bartlett then telephoned Osborn.

After entering the lot Speir and Puffer unloaded the trees and stacked them on the north side of the fence surrounding the lot. (R. I, 58–59). While the trees were being unloaded Osborn drove by the lot and observed that the trees were "basically Alpine fir." (Id. at 71–72). The trees were not moved for the rest of the day. (Id. at 60).

At approximately 5:00 p. m., Bartlett, Osborn and several other forest rangers and law enforcement officers arrived at Black's lot with a search warrant. Osborn directed Bartlett to the stack of trees that he had seen unloaded from Speir's truck. The stack consisted of 200–300 trees, most of which were Alpine fir. (R. I, 20–21). Bartlett pulled two Engelmann spruce trees from this stack and matched them up with two of the stump cuts that he had made in the National Forest near Marysvale. (Id. at 21–22). At about this time Speir told Mr. Osborn that if one of the limbs were broken on the trees, they would have to pay for it. (Id. at 76). Bartlett had the stack of trees seized and removed to the Forest Service warehouse where additional stump cuts were matched. Defendants were thereafter charged with the violations of § 641 described above.

In their defense, Speir and Puffer testified that on November 26 they had been cutting pinyon pines in Hamlin Valley, an area approximately 90 miles west of Beaver. Speir testified that on the morning of November 27, he left his house at about 7:30 a. m., purchased gas at a service station in Beaver at 8:00 a. m. which was paid for with a check introduced into evidence at the trial, and picked Puffer up at his house at about 8:30 a. m. to help him unload at Black's lot a load of pinyon trees which had been cut in Hamlin Valley. Pinyon pine was the only type of tree unloaded by them at the lot. (Id. at 97–99).

An attendant from the gas station verified Speir's stop at the station in Beaver at about 8:00 a. m. and said Speir's truck was loaded with pinyon pine. (Id. at 111–12). Speir testified that his arrangement with Black was by consignment and he was paid if Black sold the trees. Speir said he also supplied other people with trees. He said Black had 8 or 10 cutters working for him who supply him and other people. (Id. at 105–06). Puffer's testimony corroborated that of Speir and made a similar defense.

Black testified that he had delivered a load of trees to Ogden, Utah, on the night of November 26 and returned to Beaver at about 6:00 a. m. the following morning. He then went to bed until the early afternoon. At about 4:00 p. m. he began loading his truck in preparation for another trip to Ogden. When Speir and Puffer drove past his lot, he asked them to assist him with the loading. He testified that they told him the trees they had cut were from Pine Valley.

A. *The proof connecting Speir and Puffer to theft of trees from the National Forest*

Defendants Speir and Puffer first contend the Government's proof was insufficient to establish that the trees seized from Black's lot were the same trees unloaded by Speir and Puffer earlier that day. They say there was a break in Mrs. Bartlett's observation, that the trees were not watched all day by Osborn and Mrs. Bartlett, and that her son who watched some of the time did not testify.

We cannot agree. Mrs. Bartlett watched the unloading except for about one minute while she changed her vantage point. (R. I,

63, 70). Osborn also testified he saw where Speir and Puffer were stacking the trees. (Id. at 71). Osborn was there when the rangers went to the lot with the search warrant and testified that "they were loading that particular pile of trees." (Id. at 74). Moreover, an admission of some interest in these particular trees was made by Speir when he told Osborn that if they broke a limb off the trees, they would have to pay for it. (Id. at 76).

■ The weighing of the evidence was for the jury and it was clearly sufficient for the jury to infer the trees which were seized were those brought in by Speir and Puffer.

Defendants Speir and Puffer next argue that the proof failed to establish that the trees seized in Black's lot had been taken from the National Forest. Despite numerous arguments on the weakness of the matching process, Ranger Bartlett testified that he was directed by Osborn to the bunch of trees Osborn saw unloaded and Bartlett made a match of two Engelmann spruce stumps taken from the National Forest to two spruce trees in Black's lot. (Id. at 20–22). The trees taken from the forest and the pile of trees Bartlett was directed to by Osborn were both largely Alpine fir. (Id. at 20). Bartlett also said that in all some 115 or 176 such matches were made by him or under his supervision. (Id. at 18, 20, 22, 45–47).

We have discussed the main portions of the Government proof and the principal arguments challenging it, which we find unpersuasive. We feel that additional points require no further discussion and are convinced that the evidence amply supports the inference that the trees brought in by Speir and Puffer were taken from the National Forest.

B. *The requirement of knowledge that the trees were property of the Government*

Further, defendants Speir and Puffer argue that their convictions must be reversed under *Findley v. United States*, 362 F.2d 921 (10th Cir.) and *United States v. Baltru-*

nas, 416 F.2d 401 (10th Cir.). Specifically they contend that it was necessary for the Government to prove that they "knew that the property involved belonged to, and was stolen from, the government." Id. at 402. They say that this required proof was lacking and that the trial court erred by not instructing the jury that knowledge that the trees were property of the Government was an essential element of the offenses.

The Government makes no convincing argument that there was proof of such knowledge on the part of Speir and Puffer. Instead the primary response by the Government is that statements in the *Findley* and *Baltrunas* cases requiring knowledge that the stolen property belonged to the Government were in error, that they were dictum, and that we should clarify our interpretation of § 641 to remove the requirement of such knowledge, in accord with the reasoning of other courts of appeals. We agree that we should reexamine *Findley* and *Baltrunas* in light of these opinions and the Supreme Court's decision in *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541.

We feel it clear that *Findley* and *Baltrunas* did hold that knowledge that the stolen property belonged to the Government is required in a prosecution under 18 U.S.C. § 641. In *Findley* we relied on *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, and *Souza v. United States*, 304 F.2d 274 (9th Cir.) and held that it was incumbent on the trial judge to advise the jury that "it was necessary for the government to prove beyond a reasonable doubt that the defendant knew that the property involved belonged to, and was stolen from, the government." 362 F.2d at 922–23.

On reexamination in light of *Feola* we must agree that the wording of 18 U.S.C. § 641 (1970) and its legislative history, analyzed in *Morissette*, show no intent that it be a required element of the federal offense that the defendant knew the stolen property belonged to the Government. See Reviser's Notes to 18 U.S.C.A. § 641; *United States v. Howey*, 427 F.2d 1017, 1018 (9th

Cir.). Use of the common law terms such as embezzlement, larceny and the like in the statute, without a contrary direction, may be taken as satisfaction with widely accepted definitions, not as a departure from them. See *Morissette*, supra, 342 U.S. at 263, 72 S.Ct. 240. And "[i]t was not an essential part of the common law larceny-type offense that the thief knew who owned the property he took; it was enough that he knew it did not belong to him." *United States v. Howey*, supra, 427 F.2d at 1018.

The requirement in § 641 that the stolen property be a "record, voucher, money, or thing of value of the United States . . ." furnishes the jurisdictional basis for the federal offense. However, knowledge of such jurisdictional facts is not generally an element of the required intent under federal statutes. See *Feola*, supra, 420 U.S. 684–85, 694–95, 95 S.Ct. 1255; *United States v. Newson*, 531 F.2d 979, 981 (10th Cir.). In *Newson*, we dealt with convictions of a substantive offense under 18 U.S.C. § 2341 of interstate transportation with fraudulent intent of false securities and of conspiracy to commit that offense. In upholding the convictions without proof of knowledge of the jurisdictional facts we stated, id. at 981:

> It is also clearly established that actual knowledge of the interstate transportation of the instrument on the part of the defendant is not required. (Citations omitted) The essence of the offense is the fraudulent scheme itself and the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction.

■ On reconsideration in light of *Feola, Newson* and other recent opinions,[3] we are convinced that the holdings in *Findley* and *Baltrunas* requiring knowledge of the jurisdictional facts cannot be sustained and should be overruled. It follows that there was no error in the charge and no defect in the proof with respect to knowledge that the stolen trees were Government property.

### C. Claims of error and unfairness in conduct of the trial

Numerous complaints are made of undue restriction of cross-examination, improper questioning of witnesses by the trial judge, prejudicial comments by him on the evidence, and error in the instructions.

■ The extent of cross-examination is discretionary with the trial judge and reversible error occurs only when the exercise of that discretion is prejudicial, *United States v. Jackson*, 482 F.2d 1167, 1176 (10th Cir.), cert. denied, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111, which we do not find here. The court has the right, within reasonable bounds, to question witnesses for the purpose of eliciting the truth. *United States v. Latimer*, 548 F.2d 311, 314 (10th Cir.). We also feel the trial judge did not exceed the bounds of his discretion in this respect. *Jordan v. United States*, 295 F.2d 355, 356 (10th Cir.), cert. denied, 368 U.S. 975, 82 S.Ct. 479, 7 L.Ed.2d 438.

■ The trial court made some comments on the evidence, notably about the strength of the "real evidence" consisting of the stump matches, which were undoubtedly beneficial to the prosecution. Nevertheless, such comments may be made within reasonable bounds, provided that the court makes it clear that the jury is not bound by his views and that all questions of fact are submitted for the jury to decide. See *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321. While in all these comments the trial court pointedly favored the prosecution's view on the case and more restraint would have been desirable, we cannot agree that reversible error occurred. Other arguments including complaints about the instructions are made but on this record we find no prejudicial error calling for reversal.

### D. Proof of value of the trees

■ Defendants argue that the Government failed to prove that the value of the

---

**3.** See *United States v. Jermendy*, 544 F.2d 640, 641 (2d Cir.) cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585; *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir.); *United States v. Smith*, 489 F.2d 1330, 1333–34 (7th Cir.), cert. denied, 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773; *United States v. Denmon*, 483 F.2d 1093, 1094–95 (8th Cir.); *United States v. Boyd*, 446 F.2d 1267, 1274 (5th Cir.); *United States v. Howey*, supra, 427 F.2d at 1018.

trees exceeded $100 as § 641 requires. However, in view of the proof of up to 300 trees being taken, testimony as to what the defendants were offering to sell them for, and the costs and effort undertaken with them, we feel the overall proof was sufficient.[4]

Accordingly, the judgments are

AFFIRMED.

---

**4.** Chief Judge Lewis and Judge Holloway dissent as to Part D of the opinion.

It is their view that value is an essential element of the felony offense. *Stevens v. United States*, 297 F.2d 664 (10th Cir.). Proof on the issue is required and a felony conviction under the statute without it cannot stand. *United States v. DiGilio*, 538 F.2d 972, 981 (3d Cir.), cert. denied, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749. Here there was evidence that defendant Black, or possibly Speir (the record is contradictory but probably the undercover agent intended to identify Black as making these statements, see R. I, 88–89), had said to an undercover agent three weeks before the November 27 events that prices would be around $4 for pinyon and $5 for spruce. Defendant Black also said he thought they could "probably reduce the price of $3.50 for pinyon and $4.50 for spruce." (R. I, 88–89). Two days later the agent phoned back and Black said that he would probably furnish some trees for $2, some that he paid stumpage for and some that he didn't, laughing about that. (Id. at 90).

That was the extent of the proof having any relevance to value. The value of the Alpine fir trees involved here—which were estimated to number 200–300 trees was never covered, nor was their size or condition shown. There was no comparison made of their values to that of pinyon or spruce. Thus the value of the Alpine fir involved is left to speculation or conjecture as to value. *United States v. DiGilio*, supra, 538 F.2d 980–81; *United States v. Wilson*, 284 F.2d 407, 408 (4th Cir.).

This defect does not require reversal of the verdicts. The proper disposition in the opinion of Chief Judge Lewis and Judge Holloway would be to vacate the judgments and remand for modification as misdemeanor convictions and sentencing under the misdemeanor provisions of 18 U.S.C. § 641 (1970), as in *DiGilio*.