**STATE of Missouri, Plaintiff-Respondent,**

v.

**Olen Dale NEAL, Defendant-Appellant.**

**No. 13436.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 10, 1984.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Oct. 30, 1984.

Application to Transfer Denied Dec. 18, 1984.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Margaret Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Chief Judge.

Defendant was charged with stealing seven hundred dollars from an undercover highway patrolman "by deceit by purposely representing that the defendant would return to Trooper J.J. Bickers with cocaine in exchange for said U.S. Currency, which representation was known to defendant to be false and upon which representation Trooper J.J. Bickers relied." A jury found defendant guilty and he appeals.

Defendant contends the evidence was insufficient to show that at the time he took the money and said he would "retrieve the cocaine" he had no intention of returning with it.

Defendant was charged with violating § 570.030.1, RSMo Supp.1982. It states: "A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

" '*Deceit*' means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind. The term '*deceit*' does not, however, include falsity as to matters having no pe-

cuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise". § 570.010(7), RSMo Supp.1982.

In determining if the evidence is sufficient to support the charge, the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded. *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App.1979).

▮ Intent at the time of a promise is rarely open to direct proof, but may be proved by circumstantial evidence. *State v. Inscore*, 592 S.W.2d 809, 811 (Mo. banc 1980). To establish facts by circumstantial evidence, the circumstances must be such as are inconsistent with defendant's innocence, but it is not necessary that they be absolutely conclusive of his guilt. *State v. McGee*, 592 S.W.2d 886, 887 (Mo.App.1980).

The circumstances which the state relied on to establish defendant's intent not to perform the promise are not inconsistent with his innocence. We determine that the evidence was insufficient to support the charge, even when we consider it and all reasonable inferences most favorable to the state.

Trooper Bickers made an agreement in his apartment with defendant to purchase one-quarter ounce of cocaine for seven hundred dollars. Bicker's testimony setting forth the facts on which the state relies was as follows:

"Q. Now, calling your attention back to when the defendant came into the apartment on April 22nd, did the defendant mention cocaine after coming into the apartment?

A. Yes.

Q. And what did he say in regards to cocaine?

A. He said that he could produce a sample of cocaine for me to inspect that evening.

Q. Did he state what amount it would be?

A. Yes.

Q. How much?

A. One-quarter ounce.

Q. And did he state what the price would be?

A. Yes.

Q. And how much?

A. $700.00.

Q. And did he say anything about the quality or purity of the sample?

A. He said that the cocaine could possibly run as high as eighty-five per cent purity cocaine or better.

Q. Did he have the cocaine with him?

A. No.

Q. What did he say that he'd have to do with the money to acquire this cocaine?

A. He would have to gather the money from me and go to another location to retrieve the cocaine, apparently from his source.

Q. And did he give any indication as to how soon he would return?

A. He told me that he would quite possibly return between thirty and forty minutes.

Q. What, if anything, did the defendant promise to do when he returned for the money that you would give him?

A. He was to retrieve the one-quarter ounce package of cocaine and deliver it to me.

Q. And, Trooper Bickers, what, if anything, did you do in exchange for that promise?

A. I gave him $700.00.

Q. And was that United States Currency?

A. Yes, all in $100.00 bills.

Q. Whose money was that?

A. This was funding that I had obtained from the Mid-States Organized Crime Information Center.

Q. And for what purpose had you obtained it?

A. This was in order to purchase illicit narcotics and other contraband during the course of the investigation.

Q. And on that evening it was under your charge and control?

A. That's correct.

Q. Did the defendant depart the apartment?

A. Yes.

Q. And what did you think he would do?

MR. MC NABB: I object to that as being hearsay.

THE COURT: Overruled.

THE WITNESS: I expected him to return in the agreed thirty to forty minutes and give me the cocaine.

Q. (By Mr. Monroe) But for the representation that the defendant would return with the cocaine would you have handed him $700.00?

A. No, he already had the money. He was return the cocaine to me after I gave him the money up front or gave him the money on a loan.

Q. He didn't have the money when he first came into your apartment?

A. No.

Q. You had given him the money while he was there?

A. That's correct.

Q. Did the defendant return with the cocaine or any other items that evening?

A. No.

Q. Did you ever receive any telephone calls?

A. No.

Q. Did the defendant ever return the cash?

A. No.

Q. Did anybody else ever deliver the cocaine or return the money for the defendant?

A. No, sir.

Q. Did you ever attempt to reach the defendant at the telephone number that he had provided you?

A. Yes.

Q. And were you successful?

A. No.

Q. Did the defendant ever return or seek you out up to November 19th, 1982?

A. Not to my knowledge."

There was no evidence of other incidents where the defendant obtained money by making a promise he did not perform which might have indicated his intent as in *State v. Inscore*, 592 S.W.2d 809 (Mo. banc 1980); *State v. Davis*, 675 S.W.2d 652 (Mo.App. Southern District 1984), and *State v. Baugher*, 646 S.W.2d 865 (Mo.App.1982).

■ The breach of a contractual duty does not amount to larceny by false pretenses, nor is the failure of a debtor to account to his creditor sufficient in itself to support a criminal prosecution. *State v. Hardin*, 627 S.W.2d 908, 911 (Mo.App. 1982).

The state contends that the defendant persuading Bickers to give him the money, combined with the failure to deliver the cocaine, and defendant's retaining the money and avoiding the trooper, was sufficient to show the necessary intent. The state cites as having similar facts *Andersen v. State*, 418 So.2d 967 (Ala.Cr.App.1982); *United States v. Smith*, 489 F.2d 1330 (7th Cir.1973); and *United States v. Crutchley*, 502 F.2d 1195 (3d Cir.1974). They are not persuasive.

*Andersen* involved a different, but similar statute, and while we do not necessarily agree with its result, there were different and additional facts following the promise than here. In *Smith* there was no promise to perform in the future. The heroin was to be transferred when the money was given, but the defendant left with the money immediately. In *Crutchley* the defendant took the money after talking to an occupant of a house, went into the house and then went out a rear window with the money. There was evidence that he knew that the person he got the money from was "the police" and that defendant "planned to rob" him. 502 F.2d at 1198.

Seeking the money beforehand does not show an intent to keep it. The state's evidence indicates that defendant needed the money to purchase the cocaine from a "source". It is possible, particularly as he was dealing with an illegal substance, that he could not buy it as promised.

Section 570.010(7) provides in part: "Deception as to the actor's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise". This states no more than common experience shows. Conditions frequently cause someone not to perform an agreement they intended to at the time they made it.

If defendant was avoiding the trooper, he may have done so because he was suspicious or afraid of him, or fearful of consequences he might suffer from not being able to complete the transaction. He may have learned after leaving the apartment who the trooper was or may not have been able to purchase the cocaine and then decided not to return the money.

There was an indication here that the money may have been transferred as a loan. The comments following § 570.010 in 41 V.A.M.S. 435 state that were it not for the rule preventing an adverse inference to a defendant from his failure to perform a future promise "persons borrowing money and thereafter suffering financial reverses and failing to meet their obligation to repay might possibly be convicted without more; the fact of nonperformance being used to infer an intention not to perform at the time the loan was obtained." The state contends that this is not the situation contemplated in those comments as it is not a "traditional consumer relationship".

Dealing or purporting to deal with an illegal substance does not show that an intention not to perform existed at the time the transaction was discussed and the first step taken. Such a transaction might create more of an incentive for a change of mind. A person might realize that they should not participate in the transaction because it is wrong, or because law enforcement agencies are involved, and may avoid the other person because they fear the consequences if they saw him again or attempted to return the money.

This opinion mentions but a few of the many possible explanations as to why defendant did not return, all consistent with his intending to return at the time he took the money. What the evidence shows occurred following the agreement was not inconsistent with defendant's innocence and casts no light on what defendant's intention was at the time he took the money. Whether he intended to return with the cocaine is left totally to speculation.

There was no basis for the jury to determine beyond a reasonable doubt that defendant did not intend to perform at the time he took the money. Compare *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978) and *State v. Basham*, 571 S.W.2d 130 (Mo. App.1978), where the evidence was held insufficient to show fraudulent intent to support the crimes charged. Other jurisdictions hold similarly. See *People v. Rolston*, 113 Ill.App.3d 727, 70 Ill.Dec. 87, 448 N.E.2d 965 (1983); *People v. Jensen*, 103 Ill.App.3d 451, 59 Ill.Dec. 219, 431 N.E.2d 720 (1982); *Commonwealth v. True*, 16 Mass.App. 709, 455 N.E.2d 453 (1983); *Peterson v. State*, 645 S.W.2d 807 (Tex.Cr. App.1983); *Phillips v. State*, 640 S.W.2d 293 (Tex.Cr.App.1982).

The judgment is reversed and defendant ordered discharged.

HOGAN, P.J., and MAUS and CROW, JJ., concur.