In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-2970

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDDIE C. HICKS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:01-CR-00101(1) — **Joan H. Lefkow**, *Judge.*

———————————

ARGUED SEPTEMBER 29, 2021 — DECIDED OCTOBER 6, 2021

———————————

Before EASTERBROOK, RIPPLE, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* For about 30 years, Eddie
Hicks worked as a police officer in Chicago. A jury concluded
that he used his position to steal drugs and guns from pushers
and to extort money from them. Hicks and his confederates
(some on the force and others who used fake badges to make
people believe they were) obtained from informants and other
officers information about where drugs might be found. Then
they used police cars and other departmental equipment to

search drug houses and cars thought to be carrying drugs. They used forged search warrants to reduce resistance to these tactics. After stealing drugs and guns, Hicks and his crew let the suspects go—sometimes after exchanging the contraband for cash. Contraband that could not be sold back to the dealers was sold on the black market and the proceeds divided among members of the crew. See *United States v. Hargrove*, 508 F.3d 445, 447–48 (7th Cir. 2007) (affirming the convictions of one of Hicks's confederates).

The jury convicted Hicks of eight felonies, including failure to appear on the day initially set for his trial. (He was a fugitive for about 15 years.) Sentenced to a total of 146 months' imprisonment, he does not contest the sufficiency of the evidence. It was overwhelming. But he does contest the convictions on three counts: Count 1, which charged him with violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1962, and Counts 7 and 8, which charged him with stealing money belonging to the United States, 18 U.S.C. §641. The latter crimes reflect the fact that the FBI got wind of Hicks's operations and provided money as bait in places they thought he might rob. Not knowing that he was being investigated, Hicks and his crew took the bait. Because the money Hicks stole was property of the United States, he was charged with violating §641.

A person violates RICO by running or managing an "enterprise" through a "pattern of racketeering activity," which the statute further defines as the commission of listed predicate crimes. The pattern of racketeering activity can be committed directly or through a conspiracy. To become a pattern, predicate acts must be separate from each other but related in some way. Conviction also depends on proof that the

activities of the enterprise were in or affected interstate com-
merce. Applying RICO is a notoriously complex endeavor,
see *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229
(1989), and Hicks maintains that the jury at his trial could well
have confused the conspiracy with the "enterprise" or treated
the pattern of other crimes (such as stealing or possessing
drugs and guns) as if it were the enterprise or the conspiracy,
or perhaps misunderstood how predicate offenses must be re-
lated to form a pattern.

The problem with this line of argument lies in phrases
such as "could well" and words such as "perhaps." We cannot
look inside jurors' minds to see whether they were confused.
All a court of appeals can examine is objective events, such as
the terms of the indictment, the language of the jury instruc-
tions, and the arguments of counsel. Yet Hicks did not contest
any of these matters in the district court. He did not move to
dismiss the indictment, so we must assume that it states a
technically sufficient RICO charge. (And, to our eyes, it does.)
Hicks did not object to any of the jury instructions; to the con-
trary, his counsel approved them. Nor did Hicks request any
additional instructions in order to help the jurors keep the dif-
ferent concepts straight. Finally, Hicks did not object to the
prosecutor's closing arguments about what needed to be
proved, and how, in the prosecutor's view, that had been ac-
complished. This combination of waiver (approving the jury
instructions) and forfeiture (not objecting to the indictment or
argument; not asking for more disambiguation from the
judge) leaves Hicks in a hopeless position on appeal. We do
not see anything approaching plain error with respect to the
issues that were forfeited—and those that were waived can-
not be called error at all. See, e.g., *United States v. Olano*, 507

U.S. 725, 732–38 (1993). That's all we need to say about the RICO conviction.

Section 641 says in part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof [commits a felony].

Hicks contends that the instructions on Counts 7 and 8 were defective because they did not tell the jurors that conviction depended on finding beyond a reasonable doubt that he knew that the money he stole belonged to the United States or one of its agencies, such as the FBI. His lawyer's approval of the instructions is a big obstacle to relief, but we need not stop there. The issue that Hicks raises potentially arises in every §641 prosecution, so we make clear that knowledge about who owns the money is not essential to conviction under §641. Ownership is instead the source of the national government's authority to penalize the theft. Often this is called a "jurisdictional element," but that's misleading. It has nothing to do with subject-matter jurisdiction, which 18 U.S.C. §3231 supplies for all federal criminal prosecutions. See *United States v. Martin*, 147 F.3d 529 (7th Cir. 1998). It is instead why the national government's authority obtains, even though robbery normally is a matter of state concern only.

Many courts have held that, in a prosecution under §641, knowledge of the money's ownership need not be proved. See, e.g., *United States v. Jermendy*, 544 F.2d 640, 641 (2d Cir. 1976); *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974); *United States v. Jeffery*, 631 F.3d 669, 675–76 (4th Cir.

2011); *United States v. Boyd*, 446 F.2d 1267, 1274 (5th Cir. 1971); *United States v. Sivils*, 960 F.2d 587, 595 (6th Cir. 1992); *United States v. Denmon*, 483 F.2d 1093, 1094–95 (8th Cir. 1973); *United States v. Howey*, 427 F.2d 1017, 1018 (9th Cir. 1970); *United States v. Speir*, 564 F.2d 934, 938 (10th Cir. 1977) (en banc); *United States v. Baker*, 693 F.2d 183, 186 (D.C. Cir. 1982). We are among them. See *United States v. Smith*, 489 F.2d 1330, 1334 (7th Cir. 1973). Hicks asks us to disregard all of these decisions on the ground that they don't supply much explanation. It may well be that some or all of these decisions are curt, but that's understandable in light of established norms.

Many criminal statutes require the prosecutor to prove one or more facts that are essential to the assertion of federal power. They may require, for example, proof that the conduct affected interstate commerce, see 18 U.S.C. §1951, or proof that the bank was insured by the Federal Deposit Insurance Corporation, see 18 U.S.C. §2113, or proof that the person injured in an attack was a federal agent engaged in official duties, see 18 U.S.C. §§ 111, 1114. In all of these situations, and more, a conviction does not depend on the offender's knowledge of the circumstance that caused the prosecution to be in federal rather than state court.

*United States v. Feola*, 420 U.S. 671 (1975), explains why, for §111 in particular. We choose that statute as a benchmark because it deals with attacks on federal officers, parallel to the way §641 deals with thefts of federal property. The Court summarized the history of prosecutions under statutes containing elements that justified the invocation of federal authority and observed that it had never been necessary to show that the accused knew of the federal connection. The Justices continued:

> We conclude, from all this, that in order to effectuate the congres-
> sional purpose of according maximum protection to federal offic-
> ers by making prosecution for assaults upon them cognizable in
> the federal courts, §111 cannot be construed as embodying an un-
> expressed requirement that an assailant be aware that his victim
> is a federal officer. All the statute requires is an intent to assault,
> not an intent to assault a federal officer. A contrary conclusion
> would give insufficient protection to the agent enforcing an un-
> popular law, and none to the agent acting under cover.

420 U.S. at 684 (footnote omitted). That conclusion is equally
applicable to §641. The prosecution must show an intent to
steal—that is, an intent to take property knowing that it be-
longs to someone else—but not that the defendant knew its
true owner. Any other approach would offer little or no pro-
tection when the federal property is part of an undercover op-
eration, as it was in the investigation of Hicks's thefts.

Hicks does not advance any reason why §641 would re-
quire knowledge of the federal connection when §111 does
not. Instead he observes that, in recent years, the Supreme
Court has required proof that the defendant know other ele-
ments of other statutes. His lead example is *Rehaif v. United
States*, 139 S. Ct. 2191 (2019), which holds that a person may
be found guilty of possessing firearms as a convicted felon
only if he knows that his record includes a disqualifying con-
viction. The Court held that the defendant must know that he
has been convicted of a crime punishable by a year or more in
prison (that's what disqualifies a person from possessing
guns), though the jury need not find that the defendant knew
the legal effect of such a conviction. Hicks asks us to extend
this sort of knowledge requirement to all other elements of all
federal crimes.

Yet *Rehaif* does not question the continued vitality of *Feola*—and, even if it did, we could not deem *Feola* a dead letter unless the Justices themselves overrule it. *Feola* addresses the question whether conviction depends on a defendant's knowledge of the reason the case is in federal rather than state court. *Rehaif* dealt with a different sort of problem: knowledge of a fact essential to the existence of any crime. The jury was told that Hicks could be convicted only if he knew that the money he took did not belong to him. That's what made the taking a robbery; knowing that it was a federal rather than a state robbery is not essential, given *Feola*.

AFFIRMED