**UNITED STATES of America,
Appellee,**

v.

**Marion C. DENMON, Jr., Appellant.**

**No. 72–1717.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1973.

Decided Aug. 14, 1973.

James R. Wyrsch, Kansas City, Mo., for appellant.

Anthony Nugent, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, LAY and ROSS, Circuit Judges.

GIBSON, Circuit Judge.

The defendant in a jury trial was convicted of selling, in violation of 18 U.S. C. § 641,[1] three air drills owned by the United States and of a value in excess of $100. The District Court suspended sentence and placed the defendant on probation for three years.

On appeal, the defendant raises three basic arguments. First, the indictment was insufficient since it failed to charge that the defendant knew that the property sold belonged to the United States, that the property had been stolen from the United States, and that the defendant acted knowingly, unlawfully, and wilfully. Second, the defendant claims there was insufficient evidence that the air drills were the property of the United States and had been stolen from the United States. Third, the defendant maintains that the District Court made improper comments in the presence of the jury that violated the defendant's Fifth and Fourteenth Amendments due process guarantees.

We hold that the indictment on the offense charged was legally insufficient since it failed to allege that the defendant acted knowingly, unlawfully, and wilfully. We, therefore, reverse the judgment of conviction.

On April 6, 1972, the grand jury returned the following true bill against Marion C. Denmon, Jr.:

"THE GRAND JURY CHARGES THAT:

"On or about the 3rd day of March, 1972, in the Western District of Missouri, MARION C. DENMON, JR. did sell and dispose of, without authority, three Aro one-fourth inch air drills, model number 8071C, bearing serial numbers 2896L71, 2897L1, and 2938L71, the same being the property of the United States having a value in excess of $100.00, all in violation of Section 641, Title 18, United States Code."

The first two arguments advanced by the defendant concerning the insufficiency of the indictment merit brief comment. The defendant's position, that the Government must charge in the indictment and prove at trial that the property sold belonged to the United States and had been stolen from the United States and that defendant knew these facts, finds support in the Tenth Circuit cases of Findley v. United States, 362 F.2d 921 (10th Cir. 1966) and United States v. Baltrunas, 416 F.2d 401 (10th Cir. 1969). However, the better reasoned cases in the Fifth and Ninth Circuits, United States v. Boyd, 446 F.2d 1267 (5th Cir. 1971) and United States v. Howey, 427 F.2d 1017 (9th Cir. 1970), hold that the facts that the defendant knew the property belonged to the United States and that it had been stolen from the United States were irrel-

---

1. That section reads in part:
 "§ 641. Public money, property or records.
 "Whoever . . . knowingly converts to his own use . . . or without authority, sells, conveys or disposes of any . . . thing of value of the United States . . . or any property made . . . for the United States . . .
 * * * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

evant to the crime of knowingly selling property, without authority, belonging to the United States.

■ The Ninth Circuit in *Howey* not only said. that "[w]e think that *Findley* is wrong, and we decline to follow it . . . ", but also that "[i]t was not an essential part of the common law larceny-type offense that the thief knew who owned the property he took; it was enough that he knew it did not belong to him." The Fifth Circuit in *Boyd* expressly refused to follow *Findley*, and held that the accused's knowledge of the fact of United States ownership is irrelevant in a § 641 prosecution. The District Court's instruction requiring that the defendant must have known that the property was owned by the United States was therefore unnecessary, but not prejudicial to the defendant because it imposed a greater burden upon the Government than was called for in a prosecution of this type. Therefore, the indictment in a § 641 case need not charge, nor must the Government prove, that the defendant knew that the air drills were United States property or that they were stolen from the United States. The requirement of § 641 relating to United States property is only a basis for federal jurisdiction. United States v. Howey, 427 F.2d 1017, 1018 (9th Cir. 1970).

■ However, the failure of the indictment to charge that the defendant acted knowingly, unlawfully, and wilfully is fatally defective to the Government's prosecution of this indictment. Morisette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), holds that a criminal intent is an essential element of an offense under § 641. Despite this fact, the Government contends that the trial court's proper instruction requiring a finding of criminal intent has remedied the defect in the indictment. We think a defect of the type present in this case is more than a matter of mere form or technical pleading and constitutes a substantive defect in the indictment. It is elementary in American jurisprudence that an indictment must set forth the essential elements of the offense charged, and if it does not, a conviction based thereon is fatally defective. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L. Ed.2d 252 (1960) ; Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ; Honea v. United States, 344 F. 2d 798 (5th Cir. 1965) ; Walker v. United States, 342 F.2d 22 (5th Cir. 1965) ; Hughes v. United States, 338 F.2d 651 (1st Cir. 1964) ; Standard Oil Company of Texas v. United States, 307 F.2d 120 (5th Cir. 1962) ; United States v. Jordan, 284 F.Supp. 758 (D.Mass.1968). The specific reason for the requirement that the indictment contain all of the essential elements of the crime charged in this case is that there could be no assurance that the grand jury would indict if it had not considered all of the essential elements of the crime. The defendant's Fifth Amendment protection of being called to answer only upon a grand jury indictment would be eroded by allowing the courts to supply missing elements of the charged offense. This is not to be viewed in a technical sense as requiring complete and comprehensive allegations of all the sections of statutory language, but only as stating the essential elements so as to fairly apprise the defendant of the nature of the charge, protect against double jeopardy, and assure that the grand jury has considered the essential elements of the charged offense.

■ The Supreme Court when addressing itself to this issue has throughout the years held that an indictment must allege all of the essential elements of a crime in order to be sufficient. United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953) ; Morisette v. United States, *supra* at 270, 72 S.Ct. at 253, n. 30 ; Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932) ; United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881). The Government here, however, would remedy the defect of not alleging criminal intent or *mens rea* by applying

the following "fairness test" enunciated by Professor Wright:

"The fundamental purpose of the pleadings is to inform the defendant of the charge so that he may prepare for his defense, and the test of sufficiency ought to be whether it is fair to the defendant to require him to defend on the basis of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just suggested." C. Wright, Federal Practice and Procedure, § 125, at 233–34 (1969) (footnotes omitted).

In applying the "fairness test," the Government points out that the District Court properly instructed the jury on specific intent and defined "knowingly," "unlawfully" and "wilfully." So it did and it is probable that the defendant was not mislead as to the crime charged, but we think the omission of an admittedly essential element of the offense in the indictment is a matter of substance and not form. Nor can the missing element here be properly implied or inferred from other elements and allegations of the indictment.

We heartily applaud the salutory trend in recent years to simplify the indictment, as embraced in Fed.R.Crim.P. 7(c) that only requires that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."[2] Yet we cannot go so far in economy of words as to approve the omission in an indictment of essential elements of an offense.

An analysis of the leading cases discloses the minimum allegations necessary for a valid indictment and examples of formal defects that may be corrected or disregarded. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113 (1953), which can be called an "essential ele-ments" case, held that the name of the person who administered the oaths to the defendants for a senatorial subcommittee hearing was not an essential element of the crime of perjury and need not be included in the indictment. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417 (1931), presents another type of case that may be called both an "essential elements" and a "formal defects" case. Hagner held that the failure of the indictment to specifically state, according to the words of the statute, that the defendants caused a letter to be delivered by mail was a non-prejudicial, formal defect that would be disregarded. Hagner v. United States, supra at 431, 52 S.Ct. at 419. The indictment did state that an envelope was deposited at the post office in Scranton, Pennsylvania.

Other cases concern the factual situation in which the indictment is expressly amended after the grand jury has passed upon it. In Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886), the leading case on sufficiency of indictments concerning amendments, the defendant was charged with making a false report "with intent to deceive the comptroller of the currency and the agent appointed to examine the affairs of said association." The trial court, upon a motion by the Government, struck the above italicized words as surplusage. The Court in Ex Parte Bain adopted the absolute standard that an amendment to the body of indictment, as opposed to the caption, would be in itself prejudicial and a violation of the Fifth Amendment. Ex Parte Bain, supra at 6, 8, 13, 7 S.Ct. at 784, 785, 787; see Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061, 1072 (1969). Later cases, however, have limited the holding of Ex Parte Bain by applying a "formal-versus-substance" dichotomy to all the terms of the indictment. E. g., United States v. Denny, 165 F.2d 668 (7th Cir.), cert. denied, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1947). The Su-

---

2. For an example of the formalistic pleading previously used, see Holtzoff, Reform of Federal Criminal Procedure, 3 F.R.D. 445, 448–449.

preme Court in Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L. Ed.2d 240 (1962), also read Ex Parte Bain as allowing changes of the indictment in matters of form.

Still other cases deal with a variance, in which the indictment remains unaltered by express amendment but the evidence at trial proves facts materially different from those alleged in the indictment. Gaither v. United States, *supra* at 1071 (variance defined). In Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), yet another twist was added to the increasingly knotty analysis of an indictment's sufficiency. In *Stirone,* the defendant was charged in the indictment with interfering with interstate commerce by extortion concerning the importation of sand to be used in building a steel plant. The District Court allowed introduction of evidence concerning extortion connected with the importation of steel to be used in the building. The Court in *Stirone* held that the variance was "critical" and not "surplusage"[3] and viewed it as an amendment that demanded application of Ex Parte Bain.

Due to the changing rationales and the closely analogous cases involving the sufficiency of indictments, one theory does not necessarily apply to the exclusion of others.[4] However, one unchanging common requirement in the cases directly facing the issue is the necessity for the indictment to charge the *essential* elements of the offense. United States v. Carll, 105 U.S. at 612, 26 L.Ed. 1135; Hagner v. United States, 285 U.S. at 431, 52 S.Ct. 417; Morisette v. United States, 342 U.S. at 270, 72 S.Ct. at 253

n. 30; United States v. Debrow, 346 U.S. at 376, 74 S.Ct. 113; Russell v. United States, 369 U.S. at 763, 82 S.Ct. 1038; Gaither v. United States, 413 F.2d at 1070; Rood v. United States, 340 F.2d 506, 509 (8th Cir. 1965); C. Wright, Federal Practice and Procedures § 125, at 234, n. 90 (1969) (and therein cited cases); Moore, *supra* at § 7.04, at 7–15.

Admittedly criminal intent is an essential element of a § 641 offense. The Government's suggestion for applying a "fairness test," as discussed earlier, to determine whether the defendant was sufficiently apprised of the nature of the offense completely ignores the dictates of the Fifth Anendment. The major constitutional reason why the indictment was defective in this case is the Fifth Amendment's requirement that the defendant has the right to be tried upon charges found by a grand jury. Ex Parte Bain, *supra* at 12–13, 7 S. Ct. at 787–788; Stirone v. United States, *supra* at 215–217, 80 S.Ct. at 272–273; Russell v. United States, *supra* at 771, 82 S.Ct. at 1051. We cannot say that the grand jury would have returned a true bill against the defendant if the essential element of a criminal intent would have been included in the indictment. Stirone v. United States, *supra* at 217, 80 S.Ct. at 273. Of course, the instructions to the jury at trial could not have had any effect upon the prior grand jury indictment or supply missing elements thereof.

The defendant also suggests that the insufficient indictment violated the Sixth Amendment's right to be informed of the nature and cause of the accusation in order to prepare a proper de-

---

3. Stirone v. United States, *supra* at 218, 80 S.Ct. at 273.

4. For example, Moore has commented that the policy behind essential elements cases "ties in closely with the prohibition against amendment of an indictment." Moore, *supra* at § 7.04, at 7–15, n. 6. *Stirone* evidences the close relationship between variances and amendments. Further, the "formal defect" cases are quite similar to *Stirone's* analysis that the variance was "critical" and "not sur-

plusage." Also, in United States v. Carll, the Court, in addition to stating that "all the elements necessary to constitute the offense" had to be charged in the indictment, held that the omitted matter was "a matter of substance and not a 'defect or imperfection in matter of form only,'" within the meaning of sect. 1025 of the Revised Statutes." United States v. Carll, *supra* at 612, 613. Therefore, the cases and authorities recognize that the tests for the sufficiency of indictment cases are closely interrelated.

fense and the Fifth Amendment's restriction against double jeopardy. Although these constitutional provisions are commonly argued by defendants and cited by courts in similar cases, this "essential elements" case more precisely raises the issue of the Fifth Amendment's grand jury requirement. Therefore, we only hold that the indictment was legally insufficient to comply with the grand jury indictment clause of the Fifth Amendment. The indictment here was sufficient to generally charge on the nature of the offense and provide defendant protection against double jeopardy.

 The "fairness test" urged by the Government fails to consider the necessity of the Fifth Amendment's grand jury requirement. That "fairness test" only considers the application of the Sixth Amendment's right to be sufficiently apprised of the nature of the offense charged. When a court decides, or the Government concedes as in this case, that an essential element of an offense has been omitted from the indictment, a violation of the Fifth Amendment's grand jury requirement ensues. Certain cases, as United States v. Debrow, raise the issue of whether the omitted matter is an essential element, and in those cases "fairness" or a "formal-versus-substance" test certainly could be employed to determine whether the omitted matter was an essential element. In cases, however, involving an omission of an essential element of an offnese in a Fifth Amendment frame, liberality or fairness in determining related Sixth Amendment issues is precluded. United States v. Tornabene, 222 F.2d 875, 878 (3d Cir. 1955).

Since we reverse on the basis of a fatally defective indictment, we need not discuss defendant's other issues, which we have examined and found to be without merit.

Judgment reversed and cause remanded to the District Court to set aside the judgment, vacate the sentence, and quash the indictment.