UNITED STATES of America, Appellee,

v.

**Leonard A. DONAHUE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Wally D. WEAVER, Appellant.**

**Nos. 91–1024, 91–1293.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1991.

Decided Oct. 24, 1991.

Rehearing and Rehearing En Banc
Denied Dec. 9, 1991.

Jacqueline Cook, Kansas City, Mo., argued, for Leonard Donahue.

Dennis J.C. Owens, Kansas City, Mo., argued (James E. Brown, on brief), for Wally D. Weaver.

David DeTar Newbert, Kansas City, Mo., argued, for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Leonard Donahue and Wally Weaver appeal from their convictions in District Court [1] of armed bank robbery and use of a firearm during a bank robbery. We affirm.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

On March 7, 1990, three men entered Boatmen's First National Bank in Independence, Missouri. One of them, later identified as Donahue, was wearing pantyhose over his head and carrying a gun. He approached the counter and ordered a teller to hand over the money. The two other men, who were wearing ski masks, jumped over the counter and began filling two pillow cases with money. The other teller in the bank was ordered to help them. When a customer appeared at the drive-up window, the three men left the bank. On their way to a stolen getaway car in the parking lot, a dye pack in the stolen cash exploded, unleashing a generous quantity of red dye, and causing the robbers to drop one of the pillow cases. A similar dye pack in the other pillow case exploded after the robbers got into their getaway car. The car, containing a ski mask and a blanket stained by red dye, was found twenty-five minutes later, parked near Donahue's apartment.

The police detective investigating the crime received a report that a local high school student had talked about the bank robbery to other students. The detective interviewed the student and showed him surveillance photographs taken at the bank during the robbery. The student identified the person in the pictures, whose face was clearly visible through the pantyhose (which were far too sheer for their intended purpose), as the student's neighbor, known to the student only as "Leonard." Further investigation at the apartment complex where the student lived revealed that "Leonard" was Leonard Donahue. Armed with this information, a videotape lineup which included Leonard Donahue was shown individually to the two bank tellers; both identified Donahue as the gunman in the robbery. Donahue was arrested on March 12.

While interviewing the high school student, the detective also questioned his older sister, Tammy Poole. She identified Donahue as the gunman in the bank surveillance photo. She also told police that on March 7 (at a time shortly after the robbery and the arrival of Leonard Donahue and his confederates at the Donahue residence), Tracy Donahue, Leonard's wife and Poole's neighbor, told Tammy that Leonard Donahue had robbed the Boatmen's Bank around the corner. Tammy told the investigators that she had accompanied Tracy Donahue to the Donahue residence and encountered Leonard Donahue and two other men, and that Leonard had offered her money to drive the two men downtown, an offer she declined.

From a videotape lineup she was shown, Tammy identified Wally Weaver as one of the men in Donahue's apartment on March 7. The police also received a tip that Weaver was involved in the bank robbery. Weaver was arrested on March 26. The next morning, after being released from custody, he was offered and accepted a ride home from the police detective investigating the crime. During the car ride, the detective elicited several incriminating statements from Weaver, including a comment that this bank robbery had been his first bank robbery, and that red dye had stained his clothes when the dye packs exploded.

Weaver and Donahue were indicted on June 18, 1990. A motion to suppress the witness identification of Donahue based on the videotape lineup was denied, as was a motion for severance of the joint trial. After a three-day trial, the jury found Donahue and Weaver guilty of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d) (1988), and use of a firearm during a bank robbery, in violation of 18 U.S.C. § 924(c) (1988). Seeking reversal of their convictions, they raise several arguments.

■ First, Donahue and Weaver assert that the trial court lacked jurisdiction in this case because the indictment failed to allege an essential element of the crime— criminal intent. In two previous bank robbery cases brought pursuant to 18 U.S.C. § 2113, *United States v. Williams*, 923 F.2d 76, 77 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991), and *United States v. Love*, 815 F.2d 53, 55 (8th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 177, 98 L.Ed.2d 130 (1987), we have held that "[a]n indictment is not fatally defective, though it fails to allege felonious

intent, if its wording parallels the statute." *Love*, 815 F.2d at 55. Here, the indictment tracks the statute and includes all the statutory elements of the crime. Moreover, absent a well-founded plea of insanity or coercion, neither of which is present here, it is inconceivable that anyone lacking criminal intent could commit armed bank robbery; the act itself, being inherently and essentially evil, demonstrates the criminal intent of the actor. Defendants' attack upon the sufficiency of the indictment therefore must fail.[2]

■ Donahue further contends that since 18 U.S.C. § 2113 does not require criminal intent to be alleged and proved, the statute is unconstitutionally vague. This argument is without merit. A statute that reads, in relevant part, "Whoever, by force and violence, or by intimidation, takes ... from the person or presence of another ... any ... money ... belonging to ... any bank ... [s]hall be ... imprisoned," 18 U.S.C. § 2113(a), does not " 'fail[ ] to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States v. Harriss*, 347 U.S. 612, 617 [74 S.Ct. 808, 812, 98 L.Ed. 989] (1954), [n]or is [it] so indefinite that 'it encourages arbitrary and erratic arrests and convictions,' *Papachristou v. Jacksonville*, 405 U.S. 156, 162 [92 S.Ct. 839, 843, 31 L.Ed.2d 110] (1972)." *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979). One does not have to be a rocket scientist to know that bank robbery is a crime; and the statute merely makes *malum prohibitum* (and punishable in federal court) that which already is *malum in se*.

■ Donahue next argues that the District Court erred in denying his motion to suppress the bank tellers' identification of him. He asserts that the videotape lineup that was shown individually to the two tellers, and from which they each identified him as the gunman in the robbery, was impermissibly suggestive. A two-step inquiry is applied when reviewing a claim of this sort. First, we must determine whether the lineup was impermissibly suggestive. "If it was, we must then determine whether, under the totality of the circumstances, the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.' " *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir.1991) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)).

Donahue asserts that the two other people in the videotape lineup were of vastly different heights and weights than he. Assuming, without deciding, that the videotape was impermissibly suggestive, we are unpersuaded that it created a substantial risk of misidentification. One teller testified that during the robbery she saw Donahue's face for more than a minute at a distance of only two or three feet.[3] While viewing the videotape only five days after the robbery, she stated that she was positively sure that Donahue was the gunman. She testified that when Donahue appeared on the television screen, she started shaking. She stated that she would have picked out Donahue if there had been thirty people in the lineup, instead of only three. The other teller in the bank at the time of the robbery also picked Donahue out of the

---

2. The defendants claim that *United States v. Williams*, 923 F.2d 76 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991), and *United States v. Love*, 815 F.2d 53 (8th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 177, 98 L.Ed.2d 130 (1987), are inconsistent with two earlier Eighth Circuit cases, *United States v. Opsta*, 659 F.2d 848 (8th Cir.1981), and *United States v. Denmon*, 483 F.2d 1093 (8th Cir.1973), and therefore should be disregarded. Our reading of *Opsta* and *Denmon* suggests otherwise. In *Opsta*, we recognized that " 'it is generally sufficient that an indictment set forth the offense in the words of the statute itself.' " *Opsta*,

659 F.2d at 850 (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). In *Denmon*, the essential element of the crime not alleged in the indictment was part of the statutory definition of the crime. *Denmon*, 483 F.2d at 1094 n. 1, 1097.

3. The fact that Donahue was wearing pantyhose over his head during the robbery does not increase the risk of misidentification. As can be seen from the bank surveillance photo, Appellee's Addendum at 1, Donahue's idea that the pantyhose he wore would conceal his identity was sheer folly.

videotape lineup. In the totality of these circumstances, the District Court did not abuse its discretion in denying Donahue's motion to suppress.

■ Donahue and Weaver argue that the District Court erroneously allowed into evidence hearsay testimony by Tammy Poole. At the trial, Poole testified that on March 7 her neighbor, Donahue's wife Tracy, came over to Poole's apartment about thirty minutes to an hour after the robbery had occurred. Poole testified that Tracy was nervous, and asked Tammy to go for a car ride with her. Tammy testified that when she refused, Tracy told her that they needed to talk. When Tammy, who had come home to watch her favorite soap opera, asked Tracy what she wanted to talk about, Tracy responded, "Leonard just robbed a bank around the corner." Trial Transcript at 232. Tammy testified that Tracy told her the referred-to bank was the "Boatmen's Bank around the corner." *Id.* Tammy then told the jury that she went over to the Donahue apartment, where she came upon Leonard and two other men (one of whom later was identified by Tammy as Wally Weaver). Tammy testified that the three men were nervous, and Donahue offered her money to drive the other two men downtown; she refused to give them a ride, and later left the apartment.

Defendants argue that Tammy Poole's testimony that Tracy Donahue told her Leonard Donahue had just robbed a bank was inadmissible hearsay and that its admission was so prejudicial that reversal of their convictions is required. We disagree. Assuming *arguendo* that this testimony was inadmissible hearsay, its introduction was harmless error in light of the overwhelming evidence pointing to defendants' guilt. "Only if the jury may have been 'substantially swayed' by improperly-admitted evidence must we reverse the conviction." *United States v. Davis,* 936 F.2d 352, 355 (8th Cir.1991) (quoting *United States v. Whalen,* 844 F.2d 529, 534 (8th Cir.1988)). In the present case, both of the bank tellers identified Donahue as the gunman. Tammy Poole and her brother identified the gunman in bank surveillance photos taken during the robbery as Donahue. The stolen getaway car, containing a ski mask, a red-dye-stained blanket, and a red-dye-stained five-dollar bill, was recovered approximately eighty yards from Donahue's apartment. Both bank tellers remembered Donahue's voice. Weaver confessed his participation in the bank robbery to a police detective. Tammy Poole identified Weaver as one of the men in Donahue's apartment less than an hour after the robbery. The strength of the prosecution's evidence persuades us that the admission of Poole's testimony concerning the statements made to her by Tracy Donahue, even if this portion of her testimony was inadmissible hearsay (a question we need not and do not decide), was harmless beyond a reasonable doubt. *See Davis,* 936 F.2d at 355.

Next, Weaver contends the District Court erred in allowing the police detective to testify as to the incriminating statements Weaver made to the detective on March 27. Weaver was arrested as a suspect in the bank robbery on March 26. He was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and interviewed by police. After spending the night in jail, on the morning of March 27 he was released from custody pending further investigation. At that time, the detective told him he was free to go and offered to drive Weaver home. Weaver accepted. During the trip, the detective began talking to Weaver about the robbery, and asked him some questions. Weaver responded with incriminating statements about the robbery, *e.g.,* that he had dropped a bag of money in the parking lot when the dye pack exploded. He answered questions about details of the robbery and answered in the affirmative when asked if this had been his first bank robbery. Upon arriving at Weaver's home, Weaver got out of the car and the detective left without arresting him.

Weaver argues that the conversation that took place in the police car while he was being driven home on March 27 amounted to a custodial interrogation. He further argues that the detective's testimo-

ny about the conversation should have been excluded, because Weaver was not given another *Miranda* warning prior to this conversation. Weaver did not move to suppress the detective's testimony and raised no objection to this testimony at trial. As this issue was not raised in the trial court, we can review it only under the plain error standard, which means that we cannot reverse Weaver's conviction on this ground unless the admission of the detective's testimony amounts to "plain error resulting in a miscarriage of justice." *United States v. Sanders*, 834 F.2d 717, 719 (8th Cir.1987).

■ The admission of the police detective's testimony does not meet this high standard and therefore does not amount to plain error. For starters, the record strongly suggests that the conversation between the detective and Weaver was not a custodial interrogation, and thus was not covered by *Miranda*. Weaver voluntarily accepted a ride from the detective, and went on his way once the car arrived at his destination. In any event, Weaver has not proffered the " 'extraordinary reason' " required for us to reverse his conviction under the plain error standard of review. *United States v. Munoz*, 894 F.2d 292, 294 (8th Cir.) (quoting *United States v. Thornberg*, 844 F.2d 573, 575 (8th Cir.), cert. denied, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988)), cert. denied, — U.S. —, 110 S.Ct. 1934, 109 L.Ed.2d 297 (1990). Even if a *Miranda* violation could be found in the circumstances of this case, the fact would remain that Weaver is guilty beyond any reasonable doubt of the crimes with which he was charged, and thus the admission of the detective's testimony did not result in a miscarriage of justice.

■ Finally, Donahue contends that the District Court erred in denying his motion to sever the trial and conduct separate trials for him and Weaver. Donahue claims that he was prejudiced by being tried in the same proceeding as Weaver because of the introduction of Weaver's incriminating statements. "A failure to grant severance will not be disturbed absent an abuse of discretion resulting in clear prejudice." *United States v. Payne*, 923 F.2d 595, 597 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991). Donahue has failed to show that the District Court's denial of his motion for severance was an abuse of discretion.

At the trial, the police detective testified that Weaver had admitted participating in the bank robbery. Although portions of the detective's report from which he testified were redacted to eliminate any reference to Donahue by name, references were made to the dye spraying on "everyone," and that "everyone" was scared when the dye pack went off in the car. Trial Transcript at 343, 345. Donahue claims that these neutral references to Weaver's accomplices impaired his Sixth Amendment right to confront and cross-examine the witnesses against him, even though the District Court gave a limiting instruction to the jury cautioning them not to consider Weaver's incriminating statements when deciding Donahue's case.

It is true that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–02, 107 S.Ct. 1702, 1704–05, 95 L.Ed.2d 176 (1987). This narrow exception to the general rule that the jury is conclusively presumed to follow the court's instructions was created in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Supreme Court has been reluctant to expand this exception. "[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709.[4]

4. The Court expressed no opinion as to the effect of neutral pronouns. *Richardson v.* *Marsh*, 481 U.S. 200, 211 n. 5, 107 S.Ct. 1702, 1709 n. 5, 95 L.Ed.2d 176 (1987). Our Court, as

Here, two or three references to "everyone" and "they" were included in the detective's testimony about Weaver's confession. All explicit references that Weaver made to Donahue were eliminated; the detective's testimony about Weaver's confession never mentioned Donahue's name. This testimony did not "expressly implicat[e]" Donahue, *Bruton,* 391 U.S. at 124 n. 1, 88 S.Ct. at 1621 n. 1, nor, with respect to Donahue, was it "incriminating on its face." *Richardson,* 481 U.S. at 208, 107 S.Ct. at 1707. "[T]he language in the statement as testified to did not draw attention to the fact that the prosecution had the name available to it and purposely omitted it from the statement." *United States v. Garcia,* 836 F.2d 385, 391 (8th Cir.1987). Thus, there was no improper linkage between the statement and Donahue, nor was there an impermissible invitation to speculate. *See United States v. Long,* 900 F.2d 1270, 1280 (8th Cir.1990). Only when linked to other, independent evidence that establishes the presence of more than one robber and implicates Donahue do the nonspecific references to other people in the detective's testimony about Weaver's incriminating statements draw Donahue into the picture. Thus, it is not "overwhelming[ly] probab[le]" that the jurors would not be able to follow their instructions. *Richardson,* 481 U.S. at 208, 107 S.Ct. at 1707. We decline to extend the narrow *Bruton* exception to the situation at hand, and accordingly hold that the District Court did not abuse its "wide discretion" in denying Donahue's motion for severance. *Murdock,* 928 F.2d at 298.[5]

The convictions are affirmed.

---

well as other circuit courts, has decided this issue on a case-by-case basis. *See United States v. Payne,* 923 F.2d 595, 597 (8th Cir.) (reference to "someone" violative of *Bruton* where "everyone at the trial knew who the 'someone' was"), *cert. denied,* — U.S. —, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991); *United States v. Long,* 900 F.2d 1270, 1280 (8th Cir.1990) (reference to "someone" violative of *Bruton* because the reference "led the jury straight to" the defendant); *United States v. Garcia,* 836 F.2d 385, 390–91 (8th Cir.1987) (under the circumstances, "someone" is an acceptable reference); *see also United States v. Strickland,* 935 F.2d 822, 825–26 (7th Cir.1991) (reference to "an individual" or "another person" does not violate *Bruton*), *cert. denied, Moore v. U.S.,* — U.S. —, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991) & 60 U.S.L.W. 3293 (U.S. Sept. 9, 1991) (No. 91–5726); *United States v. Benitez,* 920 F.2d 1080, 1087 (2nd Cir.1990) (reference to "friend" acceptable); *United States v. Vogt,* 910 F.2d 1184, 1191–92 (4th Cir.1990) ("client" acceptable), *cert. denied,* — U.S. —, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991); *United States v. Briscoe,* 896 F.2d 1476, 1500–03 (7th Cir.) ("we" acceptable), *cert. denied,* — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990);

*United States v. Tutino,* 883 F.2d 1125, 1135 (2nd Cir.1989) ("others," "other people," and "another person" acceptable), *cert. denied,* 493 U.S. 1081, 1082, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Espinoza–Seanez,* 862 F.2d 526, 534–35 (5th Cir.1988) (neutral pronoun acceptable if it is insufficient by itself to implicate defendant); *United States v. Bennett,* 848 F.2d 1134, 1141–42 (11th Cir.1988) ("they" violates *Bruton,* where prosecutor's opening and closing statements also referred to "they" and "they" most logically was understood to refer to defendants); *United States v. Petit,* 841 F.2d 1546, 1555–56 & n. 15 (11th Cir.) ("a friend" violative of *Bruton* where, in light of the other evidence, it could only be referring to the defendant), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988).

5. Our standard when reviewing possible *Bruton* violations is the harmless error standard. *United States v. Long,* 900 F.2d 1270, 1280 (8th Cir.1990). Here, however, we are asked to overturn the denial of a motion to sever the trial, an action subject to the abuse of discretion standard. Under either standard, we conclude that the ruling of the District Court affords Donahue no basis for relief.