46 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Erroll Lincoln BROWN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Erroll Lincoln BROWN, Defendant-Appellant.
 Nos. 92-50228, 92-50252.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1995.
Decided Jan. 24, 1995.
 
 Before: SCHROEDER, FLETCHER, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appeal from the United States District Court, for the Central District of California, D.C. No. CR-91-0836-CBM-1; Consuelo B. Marshall, District Judge, Presiding.
 
 
 3
 Erroll Lincoln Brown appeals his convictions and sentences in two separate proceedings. In his first trial, he was convicted and sentenced for assault and attempted murder of a federal officer, conspiracy to possess cocaine base, possession of cocaine base with intent to distribute, and carrying a firearm during commission of a drug crime. In his second trial, he was convicted and sentenced for being a felon in possession of a weapon that had traveled in interstate commerce. In the first trial, he claims errors in the indictment and jury instructions, improper cross-examination, insufficiency of evidence, and improper denial of his motion for new counsel. In the second trial, he claims errors in the admission of evidence from the first trial and denial of his motion for new counsel. We have jurisdiction under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291. We reverse and remand for a new trial on the charge of attempted murder of a federal officer, affirm the assault, drug and firearms convictions in Brown's first trial, and affirm the conviction and sentence in Brown's second trial.
 
 BACKGROUND
 
 4
 These cases arise from a drug sting. A confidential informant arranged a drug transaction between Brown and Agent Leston Stallworth of the Drug Enforcement Administration ("DEA"). On May 11, 1989, Envoy Hope Durran led Agent Stallworth to a location in South Central Los Angeles where Brown was waiting in a parked car. Hope had offered earlier to sell Agent Stallworth and the informant two ounces of cocaine base for $1,200. After Hope and Brown talked, Hope retrieved a baggie from a hole in a nearby wall. Agent Stallworth and Brown met on the sidewalk between their cars, and Hope and Agent Stallworth then tossed the drugs and money on the ground.
 
 
 5
 Agent Stallworth picked up the drugs and began backing away from Brown as several other DEA agents approached. When Brown was fifteen to twenty feet from Agent Stallworth, Agent Stallworth testified that Brown stepped back, pulled a revolver from his pants, and pointed it at Agent Stallworth's chest. Agent Stallworth testified that he lunged to his left, and Brown fired a shot that missed him. No bullet was recovered. Brown fled, but was arrested after he surrendered to United States Marshals on September 18, 1991. A subsequent search of his apartment turned up three handguns.
 
 
 6
 Brown was indicted by a federal grand jury for attempted murder of a federal officer, 18 U.S.C. Sec. 1114; assault on a federal officer, 8 U.S.C. Sec. 111; conspiracy to possess cocaine base with intent to distribute, 21 U.S.C. Sec. 846; possession of cocaine base with intent to distribute, 21 U.S.C. Sec. 841(a)(1); and using a firearm during a crime of violence, 18 U.S.C. Sec. 924(c). At trial, Brown admitted his involvement in the drug deal, but denied shooting at Agent Stallworth.
 
 
 7
 During deliberations, the jury sent the judge a note asking, "If we believe Brown pulled out the gun and discharged a round, is it enough to convict the defendant of Count One?" The note also stated, "There is some confusion on 'malice' and 'aforethought' being interpreted as premeditated murder."
 
 
 8
 The judge told the jury that he could not answer the questions, and instead reread some of the original instructions. Those instructions required a finding that "acting deliberately and intentionally or recklessly with extreme disregard for human life the defendant intended to kill Leston Stallworth." The judge also told the jury, "Malice, animus aforethought or premeditated murder are not elements of the charge as I read to you in the element of the offense."
 
 
 9
 The jury found Brown guilty of all charges, and the judge sentenced Brown to 228 months.
 
 
 10
 In a separate indictment stemming from the discovery of the handguns in Brown's apartment, Brown was charged with being a felon in possession of a firearm, 18 U.S.C. Sec. 922(g)(5). He was convicted and sentenced to 33 months to run consecutive to his sentence in the first case. However, following a limited remand initiated by the district court, the sentence was modified to run concurrently with the first sentence.
 
 DISCUSSION
 1. Lack of Intent Requirement in Indictment
 
 11
 Brown challenges his conviction of attempted murder of a federal officer because he contends that the statute under which he was indicted, 18 U.S.C. Sec. 1114, does not charge an offense. He cites the lack of a mens rea requirement in the language of the statute as evidence that the statute is jurisdictional only. Because Brown did not object to the indictment at trial, we review for plain error. United States v. Young, 470 U.S. 1, 15 (1985).
 
 
 12
 The government argues that Section 1114 charges an offense, and, in the alternative, that other language in Brown's indictment stated a mens rea requirement that would cure any omission in the statute.
 
 
 13
 The Supreme Court confronted the lack of a specified mens rea in Section 1114 in Braxton v. United States, 500 U.S. 344 (1991), and simply applied the common law intent requirement for attempted murder. See also Morissette v. United States, 342 U.S. 246 (1952) (refusing to infer absence of intent requirement from armed robbery statute's failure to specify such requirement); United States v. Donahue, 948 F.2d 438, 440 (8th Cir.1991), cert. denied, 112 S.Ct. 1600 (1992) (rejecting challenge to court's jurisdiction on ground bank robbery indictment failed to allege element of intent).
 
 
 14
 The only authority that Brown cites, United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert. denied, 474 U.S. 908 (1985), concerns failure to instruct on mens rea, not failure to specify mens rea in an indictment. Relying on Braxton, we conclude that Section 1114 states an offense. Other language in Brown's indictment alleged that Brown "willfully" attempted to murder Agent Stallworth "with malice aforethought." Thus, the indictment adequately stated an intent requirement.
 
 2. Instructional Error
 
 15
 Brown next claims that the trial judge erred in telling jurors that malice was not a required element of the crime of attempted murder of a federal officer. Because Brown made no objection to the instructions at trial, we review for plain error. United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989). On appeal, the adequacy of jury instructions is not determined by any one instruction, but by examining the instructions as a whole. United States v. Boekelman, 594 F.2d 1238, 1240 (9th Cir.1979).
 
 
 16
 The indictment charged that Brown "willfully and unlawfully attempted to kill, with malice aforethought, Leston Stallworth, a special agent of the United States Department of Justice, while Special Agent Stallworth was in the performance of his official duties...." This language established malice as an element of the charged crime. Thus, the jury was required to find that Brown acted with malice.
 
 
 17
 Yet, in response to the jury's query, the judge stated that malice aforethought was not a required element of the crime. The government contends that the court's statement, even if technically erroneous, was inconsequential because the court instructed the jury that it must find Brown acted intentionally, deliberately or recklessly. The Government points out that the language is identical to the wording of Ninth Circuit Model Jury Instruction 8.24E for attempted murder. In addition, Model Instruction 8.24B states, "To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life."
 
 
 18
 However, reading the judge's instructions as a whole, including his responses to the jury's inquiry, we conclude that the best that can be said for them is that they were confusing. He first correctly observed that a finding of malice--defined in different terms, however--was required. He then erroneously stated that a finding of malice was not required. Because the jury reasonably could have decided that no finding of malice was required, we conclude that the court committed plain error, and we reverse and remand for a new trial on the attempted murder charge.
 
 3. Sufficiency of Evidence
 
 19
 Brown next argues that there was insufficient evidence to convict him of attempted murder and assault. Because Brown made no renewed motion for acquittal, we review for plain error. United States v. Patton, 771 F.2d 1240, 1243 (9th Cir.1985).
 
 
 20
 Brown argues that there was insufficient evidence that a gun was fired. In the alternative, if the Government did establish that a gun was fired, he contends that there was insufficient evidence of intent to kill. He cites Agent Stallworth's testimony that Brown aimed at the spot where he was before he lunged as evidence that Brown did not intend to hit him.
 
 
 21
 Agent Stallworth's testimony that Brown fired a gun, and the testimony of three other officer who were on the scene that they heard a shot was sufficient to establish that a shot was fired. In addition, Agent Stallworth testified that Brown aimed the gun directly at his chest. A reasonable inference is that Brown wanted to kill Agent Stallworth in order to avoid arrest for his role in the drug deal, but that he did not have time to adjust his aim after Agent Stallworth lunged. Thus, the evidence was sufficient to support both the assault and the attempted murder convictions.
 
 4. Improper Cross-Examination
 
 22
 Brown next contends that the court in his first trial permitted improper cross-examination on the subjects of Brown's gun possession and past drug dealing and convictions. Because the gun possession testimony was admitted at Brown's second trial, he claims that his conviction in that trial must also be reversed.
 
 
 23
 At the first trial, the following exchange occurred during cross-examination, over a defense objection:
 
 
 24
 Q: Now, you testified that you never carried concealed weapons, didn't you?
 
 
 25
 A: Yes, I did.
 
 
 26
 Q: Does that mean that you don't have any guns?
 
 
 27
 A: Yes. I didn't carry guns, but I had in this house where I stayed, one of my friends that went to Illinois or somewhere, one of them went to Belize and he left me with two pistols.
 
 
 28
 ...
 
 
 29
 Q: So in 1991 you had possession of some handguns, didn't you?
 
 
 30
 A: Right.
 
 
 31
 Q: In fact you had a number of photographs taken of yourself posing with handguns....
 
 
 32
 The prosecutor then asked Brown about his past involvement in drug transactions and prior drug convictions. The gun testimony was admitted at Brown's second trial as evidence that he possessed firearms.
 
 
 33
 Federal Rule of Evidence 611(b) commits the scope of cross-examination to the trial judge's discretion. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353 (9th Cir.1981). In exercising this discretion, the trial court may permit cross-examination on all matters reasonably related to subjects covered by the defendant's testimony on direct. United States v. Robertson, 15 F.3d 862, 872 (9th Cir.1994), cert. denied, 115 S.Ct. 362, (1994). Because Brown did not object at trial to cross-examination regarding past drug dealing and convictions, or to the admission at the second trial of the gun testimony, we review for plain error. Young, 470 U.S. at 15.
 
 
 34
 Brown contends that the cross-examination about guns exceeded the scope of direct examination. While he acknowledges that the cross-examination had "some relevance" as impeachment of his denial on direct examination that he carried concealed weapons, he argues that possessing a gun differs from carrying one at a particular time. He also contends that his admission that he met with Agent Stallworth did not open the door to cross-examination about his drug dealing history.
 
 
 35
 Brown cites United States v. Green, 648 F.2d 587, 593-94 (9th Cir.1981), in which we disallowed cross-examination about drug dealings that had occurred before drug transactions discussed on direct examination. However, Green concerned events that had occurred six years before the drug transactions. Id.
 
 
 36
 Cross-examination about Brown's more recent drug transactions and convictions was permissible because Brown admitted on direct examination that he had met with Agent Stallworth on May 11, 1989, but he denied shooting at the agent. The Government asked Brown on cross-examination whether that meeting concerned a drug sale. The question, which is not challenged on appeal, was permissible in order to establish a motive for the shooting that Brown denied.
 
 
 37
 Brown denied that drugs were involved in the meeting. This denial opened the door to the Government's inquiry about Brown's past drug transactions and convictions.
 
 
 38
 Because Brown testified that he was not carrying a gun at that meeting, cross-examination regarding guns in his apartment was permissible. Whether he owned any guns was "reasonably related" to whether he was carrying a gun at the meeting. United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989) (permitting cross-examination about drugs, money and other items found in apartment of defendant who testified he left apartment alone on day of arrest).
 
 
 39
 Because cross-examination about guns at the first trial was proper, admission of the testimony in Brown's second trial was permissible. United States v. Mortensen, 860 F.2d 948, 951 (9th Cir.1988), cert. denied, 490 U.S. 1036 (1989).
 
 5. Denial of Appointed Counsel
 
 40
 Brown's final claim is that both of his sentences should be set aside because the sentencing judges improperly denied his requests for appointment of new counsel. Brown was represented by retained counsel. He sought the appointment of replacement counsel at sentencing in his first trial. The request was denied, and he did not renew the request until sentencing in his second trial.
 
 
 41
 We review refusal to substitute counsel for abuse of discretion. United States v. Whaley, 788 F.2d 581, 583 (9th Cir.), cert. denied, 479 U.S. 962 (1986).
 
 
 42
 Our reversal of Brown's attempted murder conviction obviates the need to consider whether sentencing at the first trial was fair. Brown's attorney made improper statements during sentencing in the second trial.[1] However, Brown was later resentenced on remand, and he was represented by new counsel at resentencing. Therefore, he has already received the relief he seeks.
 
 CONCLUSION
 
 43
 Because the judge erred in instructing the jury, we reverse and remand for a new trial on the charge of attempted murder of a federal officer. We affirm the convictions for assault, conspiracy to possess cocaine base, possession of cocaine base with intent to distribute, and carrying a firearm during commission of a drug crime. We also affirm the conviction and sentence for being a felon in possession of a weapon that had traveled in interstate commerce.
 
 
 44
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 DAVID R. THOMPSON, Circuit Judge, dissenting:
 
 45
 Because I do not agree the district court's instructions to the jury amounted to plain error, I respectfully dissent.
 
 
 46
 The Supreme Court tells us that "the plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Young, 470 U.S. 1, 15 (1985) (internal quotation marks and citations omitted). Furthermore, we must view the claim of plain error against the entire record. Id. at 16. In applying the Young standard to jury instructions, we have noted that "an improper instruction rarely justifies a finding of plain error." United States v. Wagner, 834 F.2d 1474, 1485 (9th Cir.1987) (internal citations omitted).
 
 
 47
 Brown's conviction is not a miscarriage of justice. Agent Stallworth testified that Brown aimed the gun at his chest and fired from about twenty feet away. If Agent Stallworth had not lunged to the left at the last moment, most likely he would be dead. I agree with the majority that this evidence is sufficient to support a conviction of attempted murder. More to the point, this evidence defeats any showing of plain error. What we said in Wagner applies here: "Given the facts of this case, we are convinced beyond a reasonable doubt that the erroneous instruction did not affect the outcome of the jury's deliberations, and we decline to reverse for plain error." Id.
 
 
 48
 The district court originally instructed the jury properly regarding malice, and reinstructed the jury properly following its note. True, the district court erred in telling the jury that malice was not part of the case. But this error, given the overwhelming evidence of guilt and the twice-given correct instructions as to the elements of malice, did not taint the verdict or deprive Brown of a fair trial. United States v. Hoac, 990 F.2d 1099, 1109 (9th Cir.1993), cert. denied, 114 S.Ct. 1075 (1994).
 
 
 49
 "To obtain the exceptional remedy of reversal in a criminal case on the basis of plain error there 'must be a high probability that the error materially affected the verdict.' " United States v. Sehnal, 930 F.2d 1420, 1426 (9th Cir.), cert. denied, 112 S.Ct. 1075 (1991). There is no such probability in this case.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The attorney stated that Brown had lied, and said that "the man has been making charges about me. I would have nothing but the greatest pleasure to be able to answer him from the stand."